THURN v. McARA.

1. Frauds, Statute of—Wills—Unjust Enrichment.

The statute of frauds and statute of wills are designed to thwart false claims against another's property, particularly a decedent's, but are generally not permitted to be used as a weapon in the arsenal of those who otherwise would be unjustly enriched by their own wrongdoing (CL 1948, §§ 566.106, 566.107, 702.5).

2. Wills—Constructive Trusts—Unjust Enrichment.

Courts will impose constructive trusts upon property acquired by intestate succession by one who having induced a decedent to make no will by expressly or impliedly agreeing to hold such property for the benefit of another, refuses so to do after death of decedent intestate.

3. Trusts—Constructive Trusts—Fraud.

The doctrine of constructive trusts does not depend upon fraud in the inception but may be applied to cases where property is unconscionably withheld, as where it is wrongfully acquired.

---

References for Points in Headnotes
[1] 49 Am Jur, Statute of Frauds § 532.
[2, 3] 54 Am Jur, Trusts § 218 et seq.
[4] 5 Am Jur 2d, Appeal and Error § 760.
[5] 57 Am Jur, Wills §§ 70, 553 et seq.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DESCENT AND DISTRIBUTION—DEATHBED STATEMENTS.

> Whether or not defendant, daughter of decedent, not present at time he is alleged to have made deathbed statements to the effect that he wanted plaintiff, a step-daughter, to share in his estate equally with his 5 daughters was bound by such statements is not decided, where it is found statements made were ineffective to transfer title to his property.

5. WILLS—DEATHBED DECLARATIONS BY DECEDENT.

> Oral declaration made by deceased on his deathbed, even if it be assumed he had testamentary capacity and that the statements reflected a rational desire that plaintiff step-daughter share equally in his estate with his 5 daughters *held,* insufficient to justify imposition of a constructive trust upon his estate to accomplish his assumed desire, where there had not been compliance with the statute of wills and the amount of the estate was too large to pass under a nuncupative will (CL 1948, §§ 702.5, 702.6).

Appeal from Genesee; Baker (John D.), J. Submitted June 2, 1964. (Calendar No. 4, Docket No. 50,359.) Decided November 2, 1964.

Bill by Barbara Thurn against Harry B. McAra, administrator of the estate of Charles Remus Burr, deceased, Ruth M. Watson and Jeanne B. Burks to impress a trust upon assets of estate and obtain share thereof. Judgment for plaintiff. Defendants Watson and Burks appeal. Reversed.

*Cline & George (Francis J. George,* of counsel), for plaintiff.

*Milliken & Magee,* for defendants Watson and Burks.

SOURIS, J. Many, if not most, courts in this country, as well as England's, impose constructive trusts upon property acquired by intestate succession by one who induced a decedent to make no will by

expressly or impliedly agreeing to hold such property for the benefit of another and, after death of the decedent intestate, refuses to do so. The authorities, none from Michigan, are collected in the classic texts on equity, trusts, and restitution, including among them 4 Pomeroy, Equity Jurisprudence (5th ed, 1941), §§ 1054, 1054c; 1 Scott, Trusts (2d ed, 1956), §§ 55.1, 55.3, 55.9; 1 Restatement (Second), Trusts (1959), § 55; and Restatement, Restitution (1937), § 186. See, also, annotation at 11 ALR2d 808 (1950), "Rights and remedies against one who induces, prevents, or interferes in the making, changing, or revoking of a will, or holds the fruits thereof."

Courts of equity have not been deterred, in their commitment to prevent such unjust enrichment, by statutes of frauds and statutes of wills such as our own.* While such statutes are designed to thwart false claims against another's property, particularly a decedent's, in most jurisdictions they are not per-

---

* Pertinent provisions of our statute of frauds follow:

"Sec. 6. No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing." CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906).

"Sec. 7. The preceding section shall not be construed to affect in any manner, the power of a testator in the disposition of his real estate, by a last will and testament; nor to prevent any trust from arising, or being extinguished, by implication or operation of law." CL 1948, § 566.107 (Stat Ann 1953 Rev § 26.907).

Our statute of wills pertinently provides:

"Sec. 5. No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing and signed by the testator or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by 2 or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved." CL 1948, § 702.5 (Stat Ann 1962 Rev § 27.3178[75]).

mitted to be used as a weapon in the arsenal of those who otherwise would be unjustly enriched by their own wrongdoing. Professor Scott has articulated the rationale by which courts of equity impress resulting and constructive trusts over property in order to right such wrongs which could not be undone otherwise because of the provisions of statutes of frauds and statutes of wills:

"Statutes like the statute of frauds and the statute of wills, which sometimes defeat the perfectly legitimate intentions of the owner of property in making a disposition of that property, necessarily cause hardship. In order, however, to prevent false claims, based on perjured testimony, the legislatures have provided that certain dispositions cannot be effectuated unless evidenced in certain formal ways. The legislatures have presumably balanced the hardship to the intended beneficiaries which occurs where there is an intention to create a trust, against the hardship which would result from the making of false claims; and in order to prevent the making of false claims they have required that the disposition should be evidenced in a certain formal manner. It is true that the modern tendency is to insist less than formerly on hard and fast rules as to the mode of expression of intent, and less than formerly are legitimate transactions invalidated because of a lack of some technical formality. Nevertheless, it is believed that there is a real policy involved in the statute of frauds and in the statute of wills, and there has been no tendency to do away with the formalities required by those statutes. If the requirements were merely technical and there were no sound policy underlying the statutes, it would perhaps be legitimate to avoid their operation by making purely technical distinctions; but since that is not the case, it would seem improper for the courts to undermine the statutes by such methods.

"On the other hand, the courts should not permit these statutes to be used as a means whereby a per-

son is enabled to enrich himself by making and breaking a promise, even though the promise is unenforceable. * * *

"It is submitted that where the owner of property transfers it to another, either *inter vivos* or by will, relying upon his promise to hold the property in trust for or to convey it to a third person, the transferee should not be permitted to keep the property. Ordinarily, if due respect is to be paid to the statute of frauds or statute of wills, the intended beneficiary should not be entitled to enforce a constructive trust in his favor, but a resulting trust should be imposed in favor of the settlor or his estate. If, however, the transferee obtained the property by fraud, and thereby prevented the owner of the property from making an effective disposition in favor of the third person, he thereby commits a tort against the third person; and a court of equity should give specific reparation for the tort by charging him as constructive trustee for the third person." 1 Scott, Trusts (2d ed, 1956), § 55.9.

See, also, comment *b* to Restatement, Restitution, § 186, and comments to 1 Restatement (Second), Trusts, § 55.

While there are no Michigan cases imposing constructive trusts in precisely such circumstances, our own recent decisions in closely analogous cases suggest that such equitable relief is available here, as it is in other jurisdictions, to prevent one's unjust enrichment from a decedent's estate. See *Burgess* v. *Jackson Circuit Judge,* 249 Mich 558; *Kent* v. *Klein,* 352 Mich 652; and *Nelson* v. *Woodworth,* 363 Mich 244. Particular attention should be given to the latter two cases in which we impressed constructive trusts upon property formerly belonging to decedents and, in doing so, said and said again that the doctrine of constructive trusts does not depend upon fraud in the inception, that the doctrine may be applied to cases where property is unconscionably

withheld as where it is wrongfully acquired. But *cf. Hewelt* v. *Hewelt,* 245 Mich 108, and *Haack* v. *Burmeister,* 289 Mich 418.

In this appeal it is claimed the chancellor misapplied the foregoing principles of equity in decreeing that a constructive trust be impressed upon all of the assets of defendant administrator's decedent, Charles Remus Burr, amounting to about $140,000 in real and personal property, to the end that plaintiff, decedent's step-daughter, share equally the beneficial interest therein with his five daughters. Mr. Burr, a widower, died intestate from injuries received in an automobile accident. It is conceded that, absent a will, his estate passed by intestate succession to his five daughters, plaintiff, his stepdaughter being excluded from the class entitled to share therein. However, plaintiff asserts she is entitled to a one-sixth beneficial interest in her stepfather's estate as the result of a death-bed declaration made by him to four of his daughters that he wanted his property equally divided among his "six daughters". It is her claim, in essence, that Mr. Burr expressed a wish to draw a will and, for that purpose, requested two nurses to be called to act as disinterested witnesses thereto, but upon being advised that only one nurse was available, made his declaration of testamentary desire and abandoned further effort to execute a formal will upon the assurances of his four daughters present at his bedside that his desire would be honored.

While one of the four daughters present denied at trial that she heard her father make such a declaration, the other three daughters who were present testified in substantial accord that he did, and the chancellor so found. Those three daughters subsequently assigned to plaintiff one-sixth of the share of each in decedent's estate. The fourth daughter present at decedent's bedside, Mrs. Watson, and the

daughter who was not present, Mrs. Burks, are defendants herein and resist plaintiff's claim. These defendants deny that the declaration attributed to their father, if in fact made, is entitled to the effect claimed for it by plaintiff, the statute of frauds and the statute of wills considered. In addition, defendant Burks asserts that she should not be bound in any event by anything that may have occurred during her absence. In view of our disposition of this appeal, this latter claim of Mrs. Burks need not be decided.

The testimonial record discloses that Mr. Burr first requested two nurses be called so that he could make his will. Whether or not he then contemplated formal execution of a written testamentary instrument is not at all clear from the testimony given. What is clear, however, is that at least initially he was deterred from doing so, if ever he so intended, not by anything said or done by defendants or their sisters, but rather because he did not have the two disinterested witnesses he believed he needed. Whatever Mr. Burr's intention subsequently in making the declaration that he wanted his property divided equally among his "six daughters", that oral declaration standing alone would not effect either an *inter vivos* transfer or a testamentary disposition of his estate because of the proscriptive provisions of CL 1948, § 566.106, and § 702.5 (Stat Ann 1953 Rev § 26.906 and Stat Ann 1962 Rev § 27.3178 [75]), quoted above in the margin.

If the beneficial interest in decedent's property, or any part thereof, is to be diverted from his intestate successors by imposition of a constructive trust, it is necessary, as we have seen, that his failure so to provide by will resulted from his reliance upon an express or implied agreement with those who take by intestate succession to hold for the benefit of another. Here, however, the record discloses that

shortly after Mr. Burr expressed his testamentary wishes, his attending physician entered the hospital room and, discovering that Mr. Burr's blood pressure had risen, he ordered the daughters out of the room and prescribed an injection for his patient. Whatever Mr. Burr's testamentary capacity prior thereto, and there was factual dispute with respect to it, the record conclusively discloses that thereafter Mr. Burr's condition progressively deteriorated and it is not even claimed that during the intervening period before his death he was competent or even physically able to have executed a testamentary instrument. In short, this record does not support the claim that Mr. Burr refrained from executing a will because of misplaced reliance upon his daughters' express or implied agreement to apply his property which they would receive by intestate succession to the equal benefit of all five daughters and his stepdaughter. It is doubtful from this record that he could have executed a valid testamentary instrument during the waning hours of his life even had the two witnesses he requested been produced promptly. In the circumstances disclosed by this record, it was error to impress a constructive trust for plaintiff's benefit upon a one-sixth part of decedent's estate.

We may assume that Mr. Burr's declaration was made when he was lucid and mentally competent for testamentary purposes. We may assume, indeed, that his declaration accurately reflected a rational desire that his step-daughter share equally in his estate with his five daughters. Notwithstanding these compelling assumptions, without the additional proofs of misplaced reliance inducing decedent's: failure to comply with the statute of wills, we cannot permit the invocation of the doctrine of constructive trusts to accomplish his assumed desire. At best, what we have here is an attempt to prove a nuncupative will over an estate well beyond the dollar

value permitted by the legislature to be disposed orally. See CL 1948, § 702.6 (Stat Ann 1962 Rev § 27.3178[76]).

Reversed. Costs may be taxed.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred.